Thank you, Your Honor. Good morning. May it please the Court, Stephen Wax, Legal Director of the Oregon Innocence Project, for the appellant, Mr. Bain. This appeal involves one issue, whether Mr. Bain presented sufficient evidence of innocence to undermine confidence in the verdict and pass through the Schlupp Gateway so that the District Court can assess and Mr. Wax, you did not seek relief in the state courts on the actual innocence claim, correct? Mr. Wax, there was a state post-conviction proceeding. The actual innocence was not raised as the independent credit. Yes, so the answer to my question is you did not. That is correct. Why shouldn't you? I understand that you can come directly to the federal courts, but if you do, you've got this rather difficult Schlupp Gateway to get through. Why not raise the actual innocence claim in the first instance in the state court? Several reasons, Your Honor. First, the federal courts have held that the Schlupp issue is purely a federal issue. No, I understand that you may come to us. I'm not questioning that. But as you know, you now get this Schlupp Gateway that the Supreme Court describes as difficult. I'm not sure you'd have that if you went to the state. So my question is, really, as one has practiced in this area, I wonder why you didn't choose what seemed to be the easier way to go first. The State of Oregon takes the position that a freestanding innocence claim is not cognizable in state post-conviction proceedings. My office, the Oregon Innocence Project, and many others have challenged that to date unsuccessfully. So if we were to have done that, we would not have been able to succeed in all likelihood unless the state Supreme Court changes the law. So now that you're in federal court, one of your claims is that you're entitled to an evidentiary hearing. Tell me what would happen at that evidentiary hearing if we ordered it. I believe that the evidentiary hearing would involve consideration of testimony from Justice J.B., the young woman who, when she was seven, made the allegation, who at age 15 recanted, has presented a videotape, 12-minute duration, to the district court. To the extent that there are concerns about whether that recantation is reliable, is the product of her memory and development. As her therapist said, when she was 14 to 15, just before this recantation, she was working on developing an independent voice from her mother and her own independent voice. Those issues could be explored. In addition, the psychological experts who provided the declarations regarding child interviewing techniques and memory and the way in which memory can be tainted would be called as a witness, if I had that opportunity and if it were needed, to specifically address the district court statement that Detective Rodriguez's testimony at the trial, that parents often conduct the first interview, should not have outweighed the testimony of the experts that, as one of the experts called it, outrageous that it occurred in this way. What exactly would J.B. say that was different, according to the therapist or according to you, than what she testified, I guess, previously, and how would that make a difference? Because her recantation right now is pretty generic. Judge, what she has said in the video is to give an explanation of why she was able to testify, why she came forward when she did with the recantation. That was not tested. Judge Marsh said, well, it's possible that her memory faded. It's possible that she gave that recantation under familial influence. That hasn't been tested. I think that before a recantation is rejected as a basis for passing through the Schlupp Gateway, there is an opportunity to look Judge Marsh in the eye, to have him look her in the eye, and to say, Judge, this is the product of my own memory. So you're suggesting that looking at the video was insufficient, that you all proffered? I do not believe it was insufficient. Our position was in the district court, and our position here is that we have presented sufficient evidence to pass through the Schlupp Gateway. Judge Marsh said, well, a person could, a reasonable juror could see it otherwise. With that having been said, we say as an alternative that this case should not be dismissed without further explanation of that issue. Now, this is a very difficult and unusual situation. Is it? I know it's a difficult situation. I'm just trying to figure out if it's unusual in the sense that, unfortunately, regrettably, there are a lot of children who are abused at a very young age, various ages. So I'm just trying to figure out. So every time in any other case someone comes forward with the recantation of this nature, and I say this nature because there's not a lot of specifics. I wouldn't call it a particularly strong recantation. There's a lot of details missing. Automatically, there would be an evidentiary hearing or just even just letting it go through the Schlupp Gateway? No, Your Honor. This case is unique. What we attempted to do in our brief and in the reply brief is distinguish the facts of this case from every other case decided by this Court. What is your strongest case, I'm curious, where this kind of evidence is enough to overcome Schlupp? There are very few cases that have succeeded. No, no. What you've tried to do in this case is say, here's all the cases where somebody has failed to get through the Schlupp Gateway. Ours is a little different, or ours is better. But I can't find much guidance about getting through the Gateway with this kind of evidence. Is there any case out there that says you can get through it with this kind of evidence? The Arnold case from the Seventh Circuit comes closest, and we urge you to follow what they said there, which is that recantations are difficult. It's different than DNA. It's different than other physical evidence. But the reality is that on occasion, false allegations are made. And if a young lady comes forward and says, it did not happen, she deserves to be heard, Arnold said, have an evidentiary hearing. And what we see as so different in this case is the combination of the recantation. She can say, I was not abused. I'm not sure what more detail could be provided on that score. I'm interested in this case in your proffer of lie detector tests. The district judge said without much elaboration, these are not reliable. Is there a case law in the District of Oregon that excludes lie detector tests categorically? Or was the judge making some sort of statement about these particular tests? I do not believe his statement was about these particular tests. He was not, as I read his opinion, viewing Oregon law. He is saying lie detector tests are generally not considered reliable. However, in the Schlupp context, the courts are clear that admissible and inadmissible evidence is both to be considered. There wasn't any sort of Dalbert analysis of these particular tests or these particular administrators, was there? No. There was no question raised that the lie detector tests were inaccurate in some way. And I think that we gave the 28-J letter, the Gable case, which I think is very important in terms of it's pointing out how critical it is to assess not only the circumstances under which a recantation is made, but also the circumstances under which the initial allegation is made. Here, those circumstances were horrific. State court granted custody to Mr. Bain. The real world tells us granting custody to a father is unusual. The animosity between Mrs. Bain, the child's mother, and Mr. Bain was extreme, starting with the photographs she sent to him while he was serving at a forward operating base in Afghanistan. The five explicit threats, including some foul language, you're never going to get these kids. But in that case, in Gable, if you're talking about that, the witnesses recanted soon after their initial testimony and some even recanted. I think it was during the trial. And they each explained why they had lied in the first place. And I think in that case, it was due to police coercion. So I think it seems important that the court found none of the witnesses were close family members. And in fact, some had acrimonious relationships with the defendant when they had originally testified against him. I think what Gable says, we need to do a searching review, which doing a searching review here I'm just not sure it can meet the very tough SHLUP standard. I see you only have, I don't know if you want to respond to that. To be sure, the Gable facts are different. What is the reality here in almost all child sex abuse cases is you're going to have an allegation made with no eyewitnesses and no witnesses. On rare occasions, a child later comes forward and says it didn't happen. On even rarer occasions, that's corroborated by an inquiry into the circumstances under which the initial allegation was made. The combination that's presented here of the threats, which the jury didn't hear, of the expert psychological testimony, which the jury didn't hear, that significantly impeaches and undermines the circumstances of the initial allegation with a young woman who you've had the opportunity to see who says, I submit, in a very poised way, once I got out from under my mother, although I started to question this while living with her and went through therapy, I can now tell you it didn't happen. Yes. Well, she does, she says it doesn't happen. She doesn't really say why it doesn't happen or what the reason for the original reporting, and she is surrounded by the paternal family. There's information here that the paternal family strongly believes that this did not happen. She was allowed to speak to the petitioner while he was in custody. There's just a lot of facts here that are distinguishable from any of the other cases and I think, unfortunately, weaken the basis if you're wanting us to do a searching review of the recantation. The best response I can give you, Your Honor, is if you have those concerns, order a hearing and let her and the grandmother testify and provide, under cross-examination, a more complete explanation than was possible. That's not the standard. Tell me what's required. Certainly an evidentiary hearing is not required, but I think that the conclusion the Arnold Court reached that if a hearing is denied, if the Schlupp Gateway is closed under the facts of that case and the facts of this case, in essence, the courts are saying the Schlupp Gateway can never be opened with a recantation and that, it seems to me, I would submit, is not... Or every case will be supposed to be opened with a recantation. With respect, Your Honor, that's not... And I'm just asking that to challenge you, just because you state one extreme, I can state the other and I'm just, so I'm not trying to offend you in any way. Is the evidentiary... I know your time is extended here, but Judge McGeeh's questions lead me to this inquiry. Let's assume we had an evidentiary hearing and the judge then, having listened to all the witnesses and all your evidence, said, you don't meet the Schlupp Gateway. We would review that very deferentially, would we not? Yes. So it's not necessarily clear that having a hearing means you meet the Gateway, it just means that we review that on a record. As we did in Jones, for example. Yes, it means we would go back to the district court and we would make the best argument we could and hope that the live testimony and interaction between J.B. and the court would convince the court that her memory has not faded, that she's offering her own independent statement, this did not happen, and we'd then get to the merits that are incredibly substantial. Well, you may not get to the merits, is my point. The judge may say, I've heard everything, you haven't met the Schlupp standard, I'm not going to the merits. Understood, and that's what we hope, we at least get the opportunity to make that further argument. Thank you for the additional time. Yes, I'll maybe give you one minute after this. Thank you. Good morning, may it please the court, counsel, Jordan Silk on behalf of Ethel E. Thompson. The district court correctly rejected Petitioner's Schlupp claim and dismissed his habeas petition because Petitioner failed to establish that in light of all the presently available evidence, no reasonable juror would now vote to convict Petitioner. Here's what troubles me about that. First, as a practical matter, if you were trying the case today, there is no way in the world you'd get a conviction, is there? Necessarily, the conclusion that the district court reached is that you could. But see, that strikes me as utterly nonsensical. If you were trying the case today, the case depended entirely on the testimony of J.B. There are plenty of sex abuse cases. Yes, yes, I know you have other things you want to say, but try to answer my question. Didn't the case depend entirely on the testimony of J.B.? J.B.'s testimony was the only direct evidence of the crime. It was the only evidence. The initial accusation, the context in which the initial accusation... The initial accusation was because J.B. allegedly said something to her mother. The circumstances surrounding the initial accusation provide some circumstantial indicia  In the absence of J.B.'s accusation, you would not have a case, would you? Correct. Okay, so your case rests entirely on J.B.'s accusation. In assessing... Yes? Yes. Okay, you can say the other stuff you want to say later. Let me just ask my questions. You've answered my question. In assessing the weight of that initial accusation and the context in which it was made, I'd like to point the court to one of the only details that J.B. provided in that initial accusation was that Dad drank too much beer, and then abuse would happen. Petitioner in his own trial testimony admitted that when he came back from Afghanistan, he had... We're missing each other here, so try to listen to my question and see if you can help me. You got to try the case today. Yes. Let's assume you had to try the case today. And your star witness, J.B., comes in and says, I know I said this when I was eight years old, but it didn't happen. There is no way in the world you're going to get a conviction, is there? I can't agree with no way in the world. There's plenty of sex abuse cases that are tried every day that actually involve evidence of an accusation and a subsequent recantation. And in jury's reasonable... From an accusation made when somebody was eight and a recantation made when they were 16? Probably not with that sort of passage of time. So my question is sort of a simple one. Why doesn't the state want an evidential hearing here? At the end of the hearing, you can argue like crazy about why you don't get through the Schlupp Gateway, but all we have here are a videotape of J.B.'s recantation. We have expert reports, which the judge rejects because he says they're not subject to cross-examination, which of course can't occur without an evidentiary hearing. And we've got three lie detector tests, which the judge says without any other explanation are unreliable. How can we review those conclusions, some of which seem to be credibility determinations, without an evidentiary hearing? The most interesting aspect of that to me is that it's unclear to me what exactly sort of evidentiary findings are predicate to the Schlupp analysis. Well, okay, let me give you an example. If lie detector tests, even if not admissible at court, can be used in the Schlupp analysis, let's assume we bring in three lie detector tests, and whom the judge finds applying to Daubert principles are reliable and believable, and they all indicate that Mr. Bain is not lying when he says he didn't do it. Would that be enough to get through the Schlupp case? That's the record that already exists. Well, no, the judge rejected those. He said, I'm not going to consider those because they're unreliable. But I think the nature of him, of the judge saying that they were unreliable was a categorical determination that even if they had been presented, there's nothing that would happen in the context of an evidentiary hearing that would change the analysis about the reliability of that. Couldn't a judge determine the reliability of those tests in an evidentiary hearing? I think he could determine the reliability of those tests from the documents that were presented to him. So you think this judge made a determination on these documents that these particular tests were unreliable? No, I think the nature of the judge's ruling was more closely, polygraph evidence is not reliable evidence of innocence. That's more of a categorical measure. Isn't that a mistake in the Schlupp context? Don't the cases say, if you have a lie detector test that the judge has analyzed and finds meets certain standards, it can be used. I think, but the judge acknowledged that, the judge didn't say they were completely excluded from the analysis. The judge said that polygraphs are not reliable evidence of innocence and therefore, as I read the opinion, therefore they were necessarily going to carry less weight in the totality of the analysis. He said, I'm not going to consider them because they're unreliable, as I read his order. And so, I guess we're missing each other on this question. Can I ask a different question? If J.B.'s recantation does not rise to the level of the Schlupp standard, then what kind of recantation would be sufficient for cases like this involving young children and a conviction based on the child's testimony? What kind of evidence, aside, I guess, from direct examination, which we have here, would be sufficient for a petitioner to ask that the Schlupp slander? Sure. I mean, I think a recantation that provided a more, a stronger explanation for why she testified the way she did in the initial trial, why she made, you know, essentially statements to her mother in the initial interview, in the subsequent forensic interview that defendants' habeas experts say was performed adequately, and subsequent trial testimony. Why she said the same thing in the course of those three interviews and now says that that wasn't true, a more detailed explanation explaining the reason why the story has changed now. Well, she says, essentially, in her 11-minute thing, I was under the control of my mother and listened to her, and I can't tell you precisely why I said what I said, but this  What more does she need to say, in your view, to make this sufficient and judge Regea's view to support getting through the Schlupp gateway? I think something that would essentially preclude the possibility of a reasonable juror looking at the context in which the recantation was made and reasonably inferring that this recantation itself may have been a product of external influences or external circumstances for review of the trial record. But the trial judge finds, as he says, I assume for purposes of this that she was not influenced in making the recantation. In terms of the, so again that goes back to the whole evidentiary hearing question, right? So the judge is analyzing the inferences that reasonable jurors could draw from this total record. Yeah, but that's why I'm having a difficult time. The judge says, I assume that she wasn't unduly influenced in making the recantation. The judge said he assumed she was genuine in her statement that she now What does he say right after that? What are the words right after that? I don't have them. He says, and I assume she was not influenced by family members to make it. And so he's assuming that this is an uninfluenced recantation, isn't he? Well, I think he's also acknowledging that the record relevant to the Schlupp analysis also would permit reasonable jurors to infer that the recantation was not just influenced by the family, but in terms of basically a gradual process in which the memory of the initial event faded and the general context of doubt that she's surrounded by as she grows up leads her to question her own, you know, to question whether it did happen. And all of that in its totality, I think, are all of the potential inferences, potential relevant to the Schlupp analysis that the district court performed in this case. And it determined correctly that that evidence failed to establish that no reasonable juror would now vote to convict. In other words, a reasonable juror, considering all the evidence, probably could still vote to convict Petitioner. And that means that Petitioner failed to satisfy the Schlupp standard. Can I ask you one more question? Your colleague said that there is no recourse under Oregon law for a freestanding innocence claim. Is that true? So, right, the most recent... It strikes me as unusual for a state as thoughtful as Oregon. Well, so the issues involved there are whether, given the sort of procedural nature, you know, the federal courts have only ever assumed without deciding that a freestanding actual innocence claim... Right. Is there one in Oregon? Right. No, well, so the most recent Court of Appeals case on that sort of goes through the same process of saying, we assume without deciding that this claim exists, but even if it did exist, the Petitioner in that case wouldn't have been able to satisfy the standard. So that leads to the question I really wanted to ask you, which is that they refiled this in state court. Would the state oppose that? I don't know that I can, I haven't thought through that enough to, I don't know that I could take a position on that in this context. You're asking me for... See, what strikes me as difficult in these cases is we don't have, as we normally do in habeas cases, a reasoned state court decision on the issue to which we would give deference. I mean, it strikes me that the procedural gateway nature of the Schlepp claim in this case is odd to suggest that you, it is in its nature a means of excusing a procedural default. Well, let me just give you an example. Were we in Arizona, a state not nearly as progressive as Oregon, in a subsequent post-conviction proceeding, you would come into state court and say, I now have this recantation, I now have these lie detector tests, I now have these experts, I didn't have them before, please consider them. And the trial court would, in a subsequent post-conviction proceeding, make a ruling about them, yes or no. Now, here, what you both seem to be saying to me is that the courts that convicted this defendant provide no recourse if he has a subsequent claim of actual innocence based on new evidence. Is that true? I think under current law, there's certainly no analogous Schlepp gateway standard that could... Well, I'm not talking about a gateway, you just won't hear... I'm talking about freestanding... You just won't hear a claim of actual innocence. Yeah. I mean, the state's position, which is consistent with current law, is that freestanding actual innocence claims are not cognizable under Oregon's post-conviction hearing act. So if that's the state's position, if they were to bring this claim, you would oppose it? We would oppose it, yeah. Okay. Thank you. Unless the court has any other questions? No. Thank you. I'll give you one minute, Mr. Wax. The verdict in this case was not unanimous. It was 10 to 2. We believe that that's significant to the Schlepp consideration because there was a weak case, one of the factors that the court is to consider in a Schlepp analysis, and in these circumstances, we submit that even a small piece of new evidence would likely have tipped the balance and led no reasonable juror to convict. The second point that I'd like to make, Mr. Silk used the phrase preclude the possibility of a reasonable juror saying guilty. We respectfully submit that there's a significant difference between proving innocence and raising a substantial question, a sufficient question, that a person would not be found guilty, that no reasonable juror would. This could, would divide. We submit occasionally gets confused, and we heard that in the State's argument and believe it's important to keep the focus on the probabilistic analysis required under Schlepp. Thank you, Mr. Wax. Thank you kindly. The case of Frederick Vane v. Sid Thompson is now submitted to the court. We're ready to proceed with to the next case on our calendar.
judges: Murguia, Hurwitz, Zipps